## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PATRICK ROSE, on behalf of himself and others similarly situated, | : : : | NO. |
| Plaintiff, | : : : | **CLASS ACTION COMPLAINT** |
| v. | : : : | |
| NEW TSI HOLDINGS, INC., | : : : | |
| Defendant. | : : | |

## **PRELIMINARY STATEMENT**

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. Plaintiff Patrick Rose ("Plaintiff") alleges that New TSI Holdings, Inc. ( "TSI" or "Defendant") violated the TCPA in three ways: (i) by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent; (ii) calling Plaintiff and putative class members using pre-recorded calls without their prior express written consent; and (iii) making those calls to Plaintiff and other putative class members despite their "do not call" requests.

3. These calls were made in the absence of an adequate "do not call" policy or training, as evidenced by the repeated calls to Plaintiff after specific requests that Defendant stop calling, by calls to individuals, including Plaintiff, who have taken the affirmative step of registering their number on the National Do Not Call Registry, and by repeated calls to Plaintiff using prerecorded messages.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of three proposed nationwide classes of other persons who received illegal telemarketing calls from, or on behalf of, TSI.

5. A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

7. This Court has personal jurisdiction over Defendant New TSI Holdings, Inc. because it maintains its principal place of business is located at 399 Executive Blvd., Elmsford, New York 10523 and it submitted to New York jurisdiction by registering with the Department of State to do business in this state. Further, this Court has personal jurisdiction over Defendant because Defendant committed a substantial part of the wrongful acts alleged in this Complaint in New York.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant resides in this District, where a substantial part of the events giving rise to the claims occurred.

## PARTIES

9. Plaintiff Patrick Rose resides in Charlotte, North Carolina, as he did at all relevant times during the conduct alleged in this Complaint.

10. Defendant New TSI Holdings, Inc. is a Delaware corporation whose principal place of business is located at 399 Executive Blvd., Elmsford, New York 10523.

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**A. The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls**

12. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

14. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

15. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

16. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

17. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

18. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

19. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**B.     The TCPA prohibits calls to numbers on the National Do Not Call Registry.**

20. The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

21. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

22. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

23. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### C. Automated telemarketing is a growing problem.

24. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman) (last visited June 3, 2021).

25. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 at a rate of 159.4 million per day. *See* www.robocallindex.com (last visited June 2, 2021). In 2019, nearly 60 billion robocalls were made, and in 2020, over 45 billion robocalls were made. *See id.*

26. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, 232,000 complaints in 2018, 191,761 complaints in 2019, and 155,167 complaints in 2020. *See* FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited June 2, 2021).

## FACTUAL ALLEGATIONS

### A. Factual Allegations Regarding Defendant

27. Defendant owns and operates health and fitness facilities in New York, Boston, Washington, D.C., and Philadelphia, doing business in those locations as New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, and Philadelphia Sports Clubs, and Lucille Roberts respectively. They claim to have "the largest gym network in the Northeast." *See* https://www.newyorksportsclubs.com/about-us (last visited June 17, 2021).

28. Defendant owns and operate 41 fitness clubs in New York and New Jersey (all in or near New York City under the New York Sports Club and Lucille Roberts brand names), 15 fitness clubs in Massachusetts (all in or near Boston under the Boston Sports Club brand name), three fitness clubs in Pennsylvania (all in or near Philadelphia under the Philadelphia Sports Club brand name), and four fitness clubs in or near Washington D.C. (under the Washington Sports Club brand name). S*ee* https://www.newyorksportsclubs.com/clubs (last visited June 17, 2021).

29. Defendant advertises these fitness clubs through telephone solicitation calls, including through pre-recorded calls.

30. Recipients of these telephone solicitation calls, including Plaintiff, did not consent to receive such calls.

### B. Factual Allegations Regarding Plaintiff

31. Plaintiff Patrick Rose is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

32. Mr. Rose's telephone number, (860) 463-XXXX, is listed on the National Do Not Call Registry, and has been since 2004.

33. Mr. Rose's telephone number, (860) 463-XXXX, is a personal cellular telephone number that is not used for business purposes.

34. In early 2018, Mr. Rose visited a Boston Sports Club location that is owned and operated by Defendant. At that visit, Mr. Rose received a one-day free trial membership.

35. Following that one-day free trial, Mr. Rose decided not to purchase any further membership at that Boston Sports Club location. Mr. Rose informed Defendant that he was not interested in any additional membership at Boston Sports Club.

36. However, despite unequivocally communicating that he did not wish to purchase a membership, shortly after his one-day free trial, Mr. Rose began receiving telephone solicitation calls from Boston Sports Club.

37. Mr. Rose received multiple telephone solicitation calls from Defendant between 2018 and the present.[1]

38. On at least five occasions, Mr. Rose asked Defendant to please stop contacting him.

39. Additionally, in approximately March 2021, Mr. Rose directly emailed Defendant identifying his telephone number, stating that he did not consent to receive text messages from them, and stating in the comments, "STOP CALLING AND TEXTING ME. I have contacted the branch and they have changed my information, but you keep calling from a blocked number. Take me off every list you have. Otherwise I will need to escalate to the FTC or my congressman."

---

[1] Defendant purchased the New York Sports Clubs, Boston Sports Clubs, Philadelphia Sports Clubs, Washington Sports Clubs, and Lucille Roberts fitness centers from the prior owner as part of an asset sale in the former owner's bankruptcy proceeding. *See In re Town Sports Int'l LLC*, Case No. 20-12168 (CSS), Doc. No. 639 (Bankr. D. Del. Nov. 4, 2020). Plaintiff's claims are limited to conduct that occurred after the effective date of the asset sale—November 30, 2020. *See id.* at Doc. No. 853.

40. Starting in approximately December 2020, Mr. Rose began receiving pre-recorded messages from Defendant.

41. A number of those pre-recorded messages were left on Mr. Rose's voicemail, including two identical messages in March and April of 2021.

42. On March 29, 2021, Mr. Rose received a voicemail that stated:

> [inaudible] this is Linnea from Boston Sports Club in Davis Square. Now that April is in full swing and things are finally warming and opening back up, I wanted to give you a call and invite you to join us. We're still being proactive on being Covid safe and following all the CDC protocols, plus more and more classes are being added back onto our schedule, and we also have personal trainers ready to work with you. I'm also checking to see how you're doing with your 2021 goals and if you're interested in our cancel anytime membership. I can offer you two free PT sessions when you join. To show you we aren't messing around, the first 25 people we sign up before Wednesday will also get a $25 e-gift card to top retailers like Amazon, Under Armour and Whole Foods. I sent you an email, if you have any questions, please feel free to reply or give me a call or just come by the club. We can show you around and we'll talk about your fitness goals and how to get there. Thanks for your time and we look forward to welcoming you into our fitness family.

43. On April 12, 2021, Mr. Rose received a voicemail identical to the voicemail from March 29, 2021, that stated:

> [inaudible] this is Linnea from Boston Sports Club in Davis Square. Now that April is in full swing and things are finally warming and opening back up, I wanted to give you a call and invite you to join us. We're still being proactive on being Covid safe and following all the CDC protocols, plus more and more classes are being added back onto our schedule, and we also have personal trainers ready to work with you. I'm also checking to see how you're doing with your 2021 goals and if you're interested in our cancel anytime membership. I can offer you two free PT sessions when you join. To show you we aren't messing around, the first 25 people we sign up before Wednesday will also get a $25 e-gift card to top retailers like Amazon, Under Armour and Whole Foods. I sent you an email, if you have any questions, please feel free to reply or give me a call or just come by the club. We can show you around and we'll talk about your fitness goals and how to get there. Thanks for your time and we look forward to welcoming you into our fitness family.

44. On approximately March 29, 2021, Mr. Rose submitted a consumer complaint to the Massachusetts Attorney General's Office. His complaint indicated that he received a telephone

solicitation call to his cellular telephone, that he received a voicemail message, but his phone never rang, and that he received a pre-recorded "robo-call" from Defendant promoting a gym membership.

45. The calls that Mr. Rose received from Defendant were telemarketing in purpose, designed to solicit Mr. Rose to purchase a membership with Defendant's fitness clubs.

46. Mr. Rose was not interested in any further membership at Defendant's fitness clubs and informed the callers of that on multiple occasions.

47. The calls annoyed Mr. Rose and invaded his privacy.

48. Between early 2018 and April 2021, Mr. Rose received approximately twelve calls from Defendant and, on multiple occasions, asked that Defendant stop making telephone solicitation calls to him as he was not interested in purchasing a membership to Defendant's fitness clubs.

49. Defendant either did not have or did not utilize an internal Do Not Call list, as Mr. Rose continued to receive calls from the Defendant despite his requests that they stop calling him and despite the fact that his cellular telephone number is on the National Do Not Call Registry.

    **C.**     **Additional Telemarketing Calls**

50. Plaintiff is not alone. Other individuals have complained about receiving telephone solicitation calls from Defendant and have left accompanying reviews online.

51. For example, an individual that participated in a trial membership at a Boston Sports Club location reported in February 2021 that after his trial, he chose not to purchase a membership. He then began to receive telephone solicitations despite repeated "attempts via phone, email, texts (and assurances that I'd be removed)," yet continued to receive calls. *See* https://goo.gl/maps/KdSmr7WfoGQpr3kp7 (last visited June 21, 2021).



52. Another individual reported, "have asked multiple times to be taken off call list. Still being called." *See* https://goo.gl/maps/AR6dr2eiaPL8XNVU7 (last visited June 21, 2021).

53. Another person succinctly stated:



*See* https://twitter.com/dolachka/status/1381662671880212482 (last visited June 21, 2021).

54. Plaintiff and other individuals who received these calls suffered an invasion of privacy and viewed Defendant's conduct as harassment.

## CLASS ACTION ALLEGATIONS

55. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of three National Classes of all other persons or entities similarly situated throughout the United States.

56. The Classes of persons that Plaintiff proposes to represent are defined as follows (collectively referred to as the "Classes"):

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telephone solicitation call from Defendant (or a third-party acting on behalf of Defendant), (3) within a 12-month period, (4) at any time between November 30, 2020 and the present.

**Internal DNC Class**: All persons in the United States to whom: (a) Defendant (or a third-party acting on behalf of Defendant) placed (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the call, (4) who had previously asked for the calls to stop and (5) at any time between November 30, 2020 and the present.

**Pre-Recorded Calls Class:** All persons in the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant), made one or more non-emergency telephone calls, (2) promoting Defendant's products or services, (3) to their cellular telephone number, (4) using an artificial or prerecorded voice, and (5) at any time between November 30, 2020 and the present.

57. Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

59. The potential members of the Classes number at least in the thousands.

60. Individual joinder of these persons is impracticable.

61. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

62. Plaintiff is a member of each of the Classes and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

63. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

64. This class action complaint seeks injunctive relief and money damages.

65. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    b. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

    c. whether Defendant's calls to Plaintiff and members of the National Do Not Call Registry Class constitute a violation of the TCPA;

    d. whether Defendant maintained a written "do not call" policy;

    e. whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

f. whether Defendant recorded or honored "do not call" requests of Plaintiff and members of the Internal DNC Class;

g. whether Defendant's conduct regarding its "do not call" policies constitutes a violation of the TCPA;

h. whether Defendant's pre-recorded calls to Plaintiff and members of the Pre-Recorded Calls Class constitute a violation of the TCPA; and

i. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

66. Plaintiff's claims are typical of the claims of the Classes.

67. Plaintiff's claims, like the claims of Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

68. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

69. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

70. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of

the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

71. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

72. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

73. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

74. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

75. Defendant's violations were negligent, willful, or knowing.

76. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

77. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Internal DNC Class)**

78. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

79. Defendant placed numerous calls for telemarketing purposes to Plaintiff and Internal DNC Class Members' telephone numbers.

80. Defendant did so despite not having a written policy pertaining to "do not call" requests.

81. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

82. Defendant did so despite not recording or honoring "do not call" requests.

83. Defendant placed two or more telephone calls to Plaintiff and Internal DNC Class members in a 12-month period.

84. Plaintiff and Internal DNC Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

85. Plaintiff and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

86. Plaintiff and the members of the Internal DNC Class are also entitled to and do seek injunctive relief requiring Defendant to enact a written policy pertaining to "do not call" requests, train its personnel on the existence and use of the internal "do not call list," and record and honor "do not call" requests.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Pre-Recorded Calls Class)**

87. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

88. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, not for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Pre-Recorded Calls Class using a pre-recorded message, or by the fact that third-parties did so on Defendant's behalf.

89. As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Pre-Recorded Calls Class are presumptively entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

90. Defendant's violations were negligent and/or knowing.

91. Plaintiff and members of the Pre-Recorded Calls Class are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making

calls, except for emergency purposes, to any cellular telephone numbers using a prerecorded voice in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance.

F. An order enjoining Defendant to comply with the internal "do not call" policies of the TCPA;

G. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls, to any cellular telephone numbers using a prerecorded voice, absent an emergency circumstance.

H. An award to Plaintiff and the Classes of damages, as allowed by law; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims of the Complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 23rd day of June, 2021.

              Plaintiff,
              By his Attorneys

              */s/ Anthony I. Paronich*
              Anthony I. Paronich,
              anthony@bparonichlaw.com
              PARONICH LAW, P.C.
              350 Lincoln Street, Suite 2400
              Hingham, Massachusetts 02043
              Telephone: (617) 485-0018
              Facsimile: (508) 318-8100