UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK ROSE, on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br><br>    v.<br><br>NEW TSI HOLDINGS, INC.,<br><br>                            Defendant. | No. 1:21-cv-05519<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT NEW TSI HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page No.**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 1

III.    LEGAL STANDARD ........................................................................................... 4

IV.     ARGUMENT ........................................................................................................ 4

        A.      Mr. Rose's Complaint, which Alleges He Received the Identical Pre-Recorded
                Message Twice, and the Technology that Delivered the Messages to Him, is Not
                Conclusory. ................................................................................................................ 4

        B.      Plaintiff has Plausibly Alleged that New TSI Holdings Made Multiple Calls to
                Him. ........................................................................................................................... 8

        C.      The DNC Registry Applies to Cell Phones Subscribed to by Consumers and the
                Plaintiff has Alleged he was Called on a Residential Line ...................................... 9

        D.      New TSI Holdings's Assertion that the Plaintiff Fails to Allege Willful or
                Knowing Violations Ignores the Plaintiff's Allegations......................................... 12

V.      CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Aaronson v. CHW Grp., Inc.,*
    No. 1:18-cv-1533, 2019 U.S. Dist. LEXIS 231433 (E.D. Va. Apr. 15, 2019) .................. 6

*Abramson v. Caribbean Cruise Line, Inc.,*
    No. 2:14-CV-00435, 2014 WL 2938626 (W.D. Pa. June 30, 2014) ................................ 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................... 4

*Barton v. Temescal Wellness, LLC,*
    No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211 (D. Mass. Mar. 8, 2021) ......... 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................... 4

*Cohen v. S.A.C. Trading Corp.,*
    711 F.3d 353 (2d Cir. 2013) ......................................................................................... 4

*Cunningham v. Politi,*
    2019 U.S .Dist. LEXIS 102447 (E.D. Tex. April 2019) .................................................. 11

*Dendy v. Chartrand,*
    No. 18-CV-1118-WPJ, 2019 WL 719762 (D.N.M. Feb. 20, 2019) ................................. 5

*Echevvaria v. Diversified Consultants, Inc.,*
    No. 13 Civ. 4980 (LAK) (AJP), 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014) ................. 12

*Evans v. Nat'l Auto Div., L.L.C.,*
    No. 15-8714, 2016 U.S. Dist. LEXIS 29348 (D.N.J. Mar. 7, 2016) ................................. 4

*Finnegan v. Campeau Corp.,*
    915 F.2d 824 (2d Cir. 1990), *cert. denied,* 499 U.S. 976, 113 L. Ed. 2d 721, 111 S. Ct.
    1624 (1991) ................................................................................................................. 9

*Gorss Motels, Inc. v. Sunbeam Consumer Prod.,*
    No. 3:17-CV-0969 (VLB), 2018 WL 2186446, (D. Conn. May 11, 2018) ...................... 9

*Hand v. Beach Entm't Kc,*
    456 F. Supp. 3d 1099 (W.D. Mo. 2020) ...................................................................... 10

*Hirsch v. USHealth Advisors, LLC,*
    337 F.R.D. 118 (N.D. Tex. 2020) ................................................................................ 11

*Hodgin v. Parker Waichman LLP*,
Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 (W.D. Ky. Sep. 30, 2015) ................................................................................................. 10

*Husain v. Bank of Am., N.A.*,
No. 18 CV 7646, 2020 WL 777293 (N.D. Ill. Feb. 18, 2020) ........................... 5

*Johansen v. Vivant, Inc.*,
No. 12 C 7159, 2012 WL 6590551 (N.D. Ill., Dec. 18, 2012) ......................... 7

*Keifer v. HOSOPO Corp.*,
No. 318CV1353CABKSC, 2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ....................... 8

*Manopla v. Sansone Jr.'s 66 Automall*,
No. 17-16522 (FLW) (LHG), 2020 U.S. Dist. LEXIS 74792 (D.N.J. Jan. 9, 2020).. 6, 7, 8

*Maree v. Wyndham Vacation Resorts*,
Civil Action No. 19-cv-00386-JLK, 2019 U.S. Dist. LEXIS 233207 (D. Colo. July 17, 2019).................................................................................................. 6

*Mestas v. CHW Grp. Inc.*,
No. 19-CV-792 MV/CG, 2020 U.S. Dist. LEXIS 236357 (D.N.M. Dec. 16, 2020)........ 10

*Metten v. Town Sports Int'l, LLC*,
No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138 (S.D.N.Y. Mar. 21, 2019) ... 8, 14

*Neptune v. Whetstone Partners, LLC*,
34 F.Supp.3d 1247 (S.D. Fla. 2014) ................................................................ 6

*Owens v. Starion Energy, Inc.*,
No. 3:16-CV-01912 (VAB), 2017 U.S. Dist. LEXIS 101640, 2017 WL 2838075 (D. Conn. June 30, 2017) ......................................................................... 12, 14

*Rcare v. Adelphia Supply USA, Inc.*,
No. 16-CV-1786 (ERK) (JO), 2017 U.S. Dist. LEXIS 24985 (E.D.N.Y. Feb. 21, 2017) ...................................................................................................... 13

*Rosenberg v. LoanDepot.com LLC*,
Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928 (D. Mass. Jan. 24, 2020).................................................................................................. 12

*Santiago v. Merriman River Assocs., LLC*,
No. 3:17-cv-2054-VAB, 2018 U.S. Dist. LEXIS 91781 (D. Conn. June 1, 2018).......... 14

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019) ............................................................. 11

*Shuler v. TimePayment Corp,*
    No. 19-4160, 2020 U.S. Dist. LEXIS 34192 (E.D. Pa. Feb. 28, 2020) ............................ 6

*Smith v. Truman Rd. Dev., LLC,*
    No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 (W.D. Mo. Apr. 28, 2020) ..... 10

*Sojka v. DirectBuy, Inc.,*
    35 F. Supp. 3d 996 (N.D. Ill. 2014) ...................................................................... 6

*Stevens-Bratton v. Trugreen, Inc.,*
    437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020) ...................................................... 10

*Trumper v. GE Capital Retail Bank*,
    79 F. Supp. 3d 511 (D.N.J. 2014) .......................................................................... 6

*Warman v. Law Office of Daniel M. Slane*,
    No. 14-cv-700 (LJV), 2017 U.S. Dist. LEXIS 36053, 2017 WL 971196 (W.D.N.Y. Mar. 13, 2017)............................................................................................................ 13

## STATUTES

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................................. 4

47 U.S.C. § 227(b)(3) ...................................................................................................... 12

47 U.S.C. § 227(c)(1)(A-E) ............................................................................................... 9

47 U.S.C. § 227(c)(2) ........................................................................................................ 9

47 U.S.C. § 227(c)(3) ........................................................................................................ 9

47 U.S.C. § 227(c)(5) ................................................................................................... 8, 12

## RULES

47 C.F.R. § 64.1200(a)-(m) ............................................................................................... 9

47 C.F.R. § 64.1200(c)(2) .................................................................................................. 9

47 C.F.R. § 64.1200(e)...................................................................................................... 10

47 C.F.R. § 64.2305(b) ..................................................................................................... 10

47 C.F.R. § 64.2305(d) ..................................................................................................... 10

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 4

## OTHER AUTHORITIES

18 F.C.C. Rcd. 14014; 2003 FCC LEXIS 3673 (June 26, 2003) ................................................. 10

*FTC, Law Enforcement Partners Announce New Crackdown on Illegal Robocalls,*
    https://www.ftc.gov/news-events/press-releases/2019/06/ftc-law-enforcement-partners-
    announce-new-crackdown-illegal ....................................................................................... 5

*In re Rules & Regs. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014 (July 3, 2003) ...... 11

## I.   INTRODUCTION

Defendant New TSI Holdings has brazenly engaged in nuisance telemarketing to cellular telephones and telephone numbers on the national Do Not Call Registry ("DNC") despite Plaintiff's and Class members' numerous requests that the calls stop. Plaintiff's Complaint plainly and sufficiently alleges facts that state plausible claims for New TSI Holdings' direct liability for these calls under the Telephone Consumer Protection Act ("TCPA").

First, Plaintiff has alleged specific details regarding the frequency and content of identical pre-recorded calls soliciting his business in violation of 47 U.S.C. § 227(b)(1)(A)(iii), and the technology Defendant used to make the calls. Second, Plaintiff sufficiently alleged that Defendant is responsible for making the calls that violate 47 U.S.C. § 227(c)'s prohibition against Do-Not-Call claims because the calls he received identified Defendant's business. Third, the private right of action under 47 U.S.C. § 227(c) extends to calls made to cellular telephones that Plaintiff and Class members use for residential purposes. Finally, Plaintiff alleged that he demanded that Defendant stop calling him no less than 5 times, and despite his requests, the calls continued. Such facts plainly support Plaintiff's allegation that Defendant's actions were willful or knowing and his request for treble damages.

Defendant's motion should be denied.

## II.   FACTUAL BACKGROUND

New TSI Holdings claims to have "the largest gym network in the Northeast," owning and operating facilities in New York, Boston, Washington, D.C., and Philadelphia. ECF No. 1 at ¶ 27. New TSI does business as New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, Philadelphia Sports Clubs, and Lucille Roberts. *Id*. The company uses telemarketing to advertise its gyms, including through prerecorded messages. *Id*. at ¶ 29.

- 1 -

In early 2018, Plaintiff Patrick Rose visited a Boston Sports Club owned and operated by Defendant. *Id.* at ¶ 34. There, Mr. Rose received a one-day free trial membership. *Id.* Following the one-day free trial, Mr. Rose decided not to purchase a membership and informed Defendant of his decision. *Id.* at ¶ 35.

Despite communicating that he did not wish to purchase a membership, shortly after his one-day free trial, Mr. Rose began receiving telephone solicitation calls from Boston Sports Club. *Id.* at ¶ 36. Starting in approximately December 2020, Mr. Rose also began receiving prerecorded messages. *Id.* at ¶ 40. Defendant left several messages on Mr. Rose's voicemail, including two identical messages on March 29, 2021, and April 12, 2021. *Id.* at ¶¶ 41-43. The duplicate messages provided the same recording:

> [inaudible] this is Linnea from Boston Sports Club in Davis Square. Now that April is in full swing and things are finally warming and opening back up, I wanted to give you a call and invite you to join us. We're still being proactive on being Covid safe and following all the CDC protocols, plus more and more classes are being added back onto our schedule, and we also have personal trainers ready to work with you. I'm also checking to see how you're doing with your 2021 goals and if you're interested in our cancel anytime membership. I can offer you two free PT sessions when you join. To show you we aren't messing around, the first 25 people we sign up before Wednesday will also get a $25 e-gift card to top retailers like Amazon, Under Armour and Whole Foods. I sent you an email, if you have any questions, please feel free to reply or give me a call or just come by the club. We can show you around and we'll talk about your fitness goals and how to get there. Thanks for your time and we look forward to welcoming you into our fitness family.

*Id.*

The identical pre-recorded messages followed several "do not call" requests. Mr. Rose asked Defendant to please stop contacting him on at least five occasions. *Id.* at ¶ 38. In approximately March 2021, Mr. Rose emailed Defendant with his telephone number and demanded that Defendant "STOP CALLING AND TEXTING ME." *Id.* at ¶ 39. He continued: "I

have contacted the branch and they have changed my information, but you keep calling from a blocked number. Take me off every list you have. Otherwise I will need to escalate to the FTC or my congressman." *Id.*

In total, Mr. Rose received 12 calls designed to solicit his purchase of a gym membership from Defendant. *Id.* at ¶¶ 45, 48. Plaintiff did not consent to any of these calls. *Id.* at ¶ 30. Mr. Rose's telephone number, (860) 463-XXXX, is a personal cellular telephone number that he does not use for business purposes. *Id.* at ¶ 33. Moreover, his telephone number is listed on the DNC and has been since 2004. *Id.* at ¶ 32.

Mr. Rose is not the only consumer that New TSI Holdings has called without permission. *Id.* at ¶ 50. Other individuals have complained online about New TSI Holding's telemarketing. *Id.* In February 2021, another consumer wrote that after a free trial, he chose not to purchase a gym membership and asked to be taken off the phone distribution list. *Id.* at ¶ 51. Despite his request, New TSI Holdings kept calling him. Although the consumer made repeated "attempts via phone, email, texts (and assurances that I'd be removed)," he continued to receive calls. *Id.* Another individual reported receiving continued calls despite having "asked multiple times to be taken off call list." *Id.* at ¶ 52. Yet another asked "[h]ow many times must I unsubscribe and request that you stop calling… Please STOP CALLING!" *Id.* at ¶ 53.

Mr. Rose pursues well-pleaded claims on behalf of three classes of individuals who, like him, received (1) more than one solicitation call within a 12-month period despite his number's registration on the DNC, (2) at least one call to a cellular telephone promoting Defendant's products or services with the use of a prerecorded voice, and (3) two or more telemarketing calls in a 12-month period to individuals who were not current customers and had previously asked for the calls to stop. *Id.* at ¶¶ 56, 73-91.

### III. LEGAL STANDARD

To state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court accepts as true all factual allegations and draws all reasonable inferences from those allegations in favor of the plaintiff. *See Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 359 (2d Cir. 2013). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. As set forth below, Plaintiff has plausibly and sufficiently alleged facts to support each of his claims.

### IV. ARGUMENT

**A.     Mr. Rose's Complaint, which Alleges He Received the Identical Pre-Recorded Message Twice, and the Technology that Delivered the Messages to Him, is Not Conclusory.**

Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). A plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5 (D.N.J. Mar. 7, 2016). Here, Plaintiff has provided full transcriptions of two pre-recorded messages, which were **<u>identical</u>** in content, both soliciting Mr. Rose to buy a gym membership

from Defendant. *See* ECF No. 1 at ¶¶ 42-43 (transcribing duplicate messages from "Linnea" at Boston Sports Club soliciting Mr. Rose's business).

Courts have repeatedly denied Rule 12(b)(6) motions to dismiss when plaintiffs have alleged they received the same recorded message more than once. *See Husain v. Bank of Am., N.A.,* No. 18 CV 7646, 2020 WL 777293, at *2 (N.D. Ill. Feb. 18, 2020) (denying motion to dismiss where "calls were made with a pre-recorded voice, leaving the exact same message with the same voice"); *Dendy v. Chartrand,* No. 18-CV-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message"); *Abramson v. Caribbean Cruise Line, Inc*., No. 2:14-CV-00435, 2014 WL 2938626, at *4 (W.D. Pa. June 30, 2014) (denying motion to dismiss where "Plaintiff alleges that he called the number back later that day and heard the same prerecorded message").

Plaintiff's Complaint also explains the specific "ringless voicemail" technology utilized by Defendant, in which Defendant directly delivered pre-recorded messages to his voicemail. ECF No. 1 at ¶ 41. "Ringless voice mails" are a specific type of pre-recorded voicemail that has led to widespread telemarketing in recent years. A pre-recorded call is delivered to a phone, but the phone doesn't ring. The call is simply received. The FTC has brought actions against the companies that utilize this type of technology. *See, e.g., FTC, Law Enforcement Partners Announce New Crackdown on Illegal Robocalls,* https://www.ftc.gov/news-events/press-releases/2019/06/ftc-law-enforcement-partners-announce-new-crackdown-illegal (last visited August 23, 2021). Mr. Rose alerted the Massachusetts Attorney General's office about the practice, explaining that "his phone never rang" and that he received a "pre-recorded 'robo-call'" from the Defendant. ECF No. 1 at ¶ 44.

These facts are more than sufficient to put New TSI Holdings on notice of the claims against it. *See, e.g., Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* Defendant called Plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding Plaintiff that his payment was due); *see also Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012.").

New TSI Holdings nevertheless claims Plaintiff's Complaint does not provide sufficient notice of Plaintiff's pre-recorded call claim, relying on a handful of distinguishable cases, none of which dictate a different result.[1] First, unlike the facts here, in *Aaronson v. CHW Grp., Inc.,* No. 1:18-cv-1533, 2019 U.S. Dist. LEXIS 231433, at *7 (E.D. Va. Apr. 15, 2019), the complaint included "almost no facts concerning the substance or details of the calls at issue" and the plaintiff conceded "he was greeted by a live, human representative." Similarly, in *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014), "the Amended Complaint says nothing about the calls Trumper received, save that the caller was looking for Enid Gonzales." Mr. Rose's allegations also exceed those in *Maree v. Wyndham Vacation Resorts*, Civil Action No. 19-cv-00386-JLK, 2019 U.S. Dist. LEXIS 233207, at *5 (D. Colo. July 17, 2019), where the plaintiff alleged the use of automated calls based "on information and belief" without providing any "further information about the calls." Finally, the court in *Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522 (FLW) (LHG), 2020 U.S. Dist. LEXIS 74792 (D.N.J. Jan. 9, 2020),

---

[1] *Shuler v. TimePayment Corp,* No. 19-4160, 2020 U.S. Dist. LEXIS 34192, at *8 (E.D. Pa. Feb. 28, 2020), involved a *pro se* plaintiff who, contrary to Mr. Rose, failed altogether to respond to the defendant's argument that she had not pled which calls originated from an automated telephone dialing system or used an artificial or prerecorded voice.

found that "Plaintiff's Complaint is bereft of any allegations regarding the tenor, nature, or circumstances of the alleged calls. Plaintiff merely proffers the content of the message and conclusorily alleges that Defendant utilized a pre-recorded message." ).

Plaintiff's Complaint, by transcribing the identical pre-recorded messages New TSI Holdings left on his voicemail, Mr. Rose has done far more than generically allege that Defendant "left pre-recorded messages on his cellular phone," without "anything else about the circumstances of a call or message." *See Johansen v. Vivant, Inc*., No. 12 C 7159, 2012 WL 6590551, at *3, *9 (N.D. Ill., Dec. 18, 2012). Rather, Plaintiff's Complaint addresses the "tenor, nature, or circumstances" of the contact. *Manopla*, 2020 U.S. Dist. LEXIS 74792 at *4. Mr. Rose alleges that in early 2018, he visited a Boston Sports Club location that is owned and operated by Defendant. ECF No. 1 at ¶ 34. At that visit, Mr. Rose received a one-day free trial membership. *Id.* However, despite unequivocally communicating that he did not wish to purchase a membership, shortly after his one-day free trial, Mr. Rose began receiving telephone solicitation calls from Boston Sports Club, including two identical pre-recorded messages in the span of days. *Id.* at ¶ 36. On at least five occasions, Mr. Rose asked Defendant to please stop contacting him. *Id.* at ¶ 38. Additionally, in approximately March 2021, Mr. Rose directly emailed Defendant identifying his telephone number, stating that he did not consent to receive text messages from them, and stating in the comments, "STOP CALLING AND TEXTING ME. I have contacted the branch and they have changed my information, but you keep calling from a blocked number. Take me off every list you have. Otherwise I will need to escalate to the FTC or my congressman." *Id.* at ¶ 39.

These detailed allegations are more than sufficient to put Defendant on notice of the conduct at issue, and to provide a basis for Plaintiff's claims. The Complaint alleges the date,

time and full content of the pre-recorded messages that Defendant is alleged to have sent.

However, if the Court believes that the Plaintiff has not made clear enough the fact that a pre-

recorded voice was utilized to make the calls, leave should be granted to amend the complaint.

*Manopla*, 2020 U.S. Dist. LEXIS 74792 at *4.

**B.      Plaintiff has Plausibly Alleged that New TSI Holdings Made Multiple Calls to Him.**

To show a violation of the DNC provisions of the TCPA, a party need only demonstrate

"more than one telephone call within any 12-month period by or on behalf of the same entity[.]"

47 U.S.C. § 227(c)(5). Taken as true, Mr. Rose's allegations—that New TSI Holdings placed

multiple calls to his telephone, two of which he received in 2021, despite his number's

registration on the DNC—constitute a violation of the TCPA. Nonetheless, citing no authority

for its position, New TSI Holdings asserts that there is no evidence that it placed the calls alleged

in the Complaint. The transcript of the two prerecorded messages Plaintiff received belies

Defendant's argument. New TSI Holdings does business as Boston Sports Club, ECF No. 1 at ¶

27, and the two prerecorded messages Mr. Rose received clearly identify the caller as "Linnea

from Boston Sports Club." *Id.* at ¶ 42.

In 2019, Judge Carter denied the same argument by Defendant's predecessor, concluding

that the plaintiff had plausibly alleged direct liability based on messages promoting "New York

Sports Clubs." *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist.

LEXIS 47138, at *8 (S.D.N.Y. Mar. 21, 2019). Other courts have similarly held that a plaintiff's

allegation he received calls marketing a defendant's business sufficiently supports the

defendant's liability. *See, e.g., Keifer v. HOSOPO Corp.*, No. 318CV1353CABKSC, 2018 WL

5295011, at *4 (S.D. Cal. Oct. 25, 2018) ("Defendant's contention that Plaintiff has failed to

establish that it, or any agent, made any of the alleged 14 calls is unavailing"); *Gorss Motels, Inc.*

*v. Sunbeam Consumer Prod.*, No. 3:17-CV-0969 (VLB), 2018 WL 2186446, at *4 (D. Conn.

May 11, 2018) (denying motion to dismiss because plaintiff sufficiently alleged defendant sent the violative fax).

It is axiomatic that at the motion to dismiss phase, "a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint." *See Finnegan v. Campeau Corp*., 915 F.2d 824, 826 (2d Cir. 1990), *cert. denied*, 499 U.S. 976, 113 L. Ed. 2d 721, 111 S. Ct. 1624 (1991). Here, Plaintiff has plainly alleged that New TSI Holdings, which does business as Boston Sports Club, identified itself as Boston Sports Club in two prerecorded voicemails he received in 2021. These facts sufficiently support Defendant's direct liability as the entity that placed the calls. Thus, Defendant's motion should be denied.

### C. The DNC Registry Applies to Cell Phones Subscribed to by Consumers and the Plaintiff has Alleged he was Called on a Residential Line

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers" a term it explicitly acknowledged easily extends to the non-business subscribers of wireless telephone lines. *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers).[2] In this regard, the Code of Federal Regulations at 47 C.F.R. § 64.1200(e) also provides that the:

> rules set forth in paragraph (c)[3] … of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991

---

[2] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

[3] Paragraph (c) of 47 C.F.R. 47 C.F.R. § 64.1200 relates to the restrictions imposed on telemarketers by the TCPA and the DNC Registry.

*See* 47 C.F.R. § 64.1200(e). At the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[4] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b).

Consistent with this legislative authority, courts have repeatedly recognized the protections afforded wireless numbers by the TCPA and the DNC Registry. *See Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 *9 (W.D. Ky. Sep. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless"); *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020) (reviewing applicable regulations and concluding that cell phones may be listed on the DNC Registry); *Smith v. Truman Rd. Dev., LLC,* No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 *37 (W.D. Mo. Apr. 28, 2020) (rejecting contention that wireless numbers cannot be listed on the DNC Registry); *Hand v. Beach Entm't Kc,* 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (rejecting claim that the TCPA does not apply to wireless numbers and certifying a DNC class action); *Mestas v. CHW Grp. Inc.*, No. 19-CV-792 MV/CG, 2020 U.S. Dist. LEXIS 236357 *32 (D.N.M. Dec. 16, 2020) (rejecting claim that wireless numbers cannot be listed on the DNC Registry).

New TSI Holdings concedes that, in some circumstances, a cellular telephone can be subject to the protections of the DNC, but contends that Plaintiff has not pled enough to warrant

---

[4] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 F.C.C. Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶¶ 22, 42 (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

that here. However, Mr. Rose has alleged that his telephone number, (860) 463-XXXX, is listed

on the DNC and has been since 2004. *See* ECF No. 1 at ¶ 33. Mr. Rose has further alleged that

his telephone number is "a personal cellular telephone number that is not used for business

purposes." *Id.* at ¶ 34. These allegations are more than sufficient to entitle Mr. Rose to the

protections of the DNC.

 The cases cited by New TSI Holdings are unpersuasive. For example, in *Shelton v. Fast*

*Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple

telemarketing calls to his cellular telephone from the defendant in alleged violation of the TCPA

and filed suit. Despite *sua sponte* expressing some skepticism about whether cellular telephone

numbers are covered by the TCPA's DNC provisions, the court ultimately awarded the plaintiff

$33,000 in statutory damages. Defendant also relies on *Cunningham v. Politi*, 2019 U.S .Dist.

LEXIS 102447 (E.D. Tex. April 2019), an outlier which fails to acknowledge 47 C.F.R.

§ 64.1200(e) or 18 F.C.C. Rcd. 14014, at ¶ 33, ¶ 36, authorities that unequivocally recognize that

wireless numbers can be listed on the DNC Registry. At least one court interpreting *Politi* has

recognized it as an "isolated authority" that is contrary to "common sense." *Hirsch v. USHealth*

*Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020).

 In 2003, the FCC noted that "there is nothing in section 227 to suggest that only a

customer's 'primary residential telephone service' was all that Congress sought to protect

through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014,

14038, ¶ 35 (July 3, 2003). The FCC "conclude[d] that wireless subscribers may participate in

the national do-not-call list." *Id.* at 14039, ¶ 36. "[W]e will presume wireless subscribers who

ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.* Mr. Rose is a

private citizen who uses the single telephone line at issue as his residential phone line, and has

explicitly stated he does not use the line for business. Thus, the FCC's presumption that wireless subscribers who place their numbers on the DNC Registry are residential subscribers should apply to him.

Courts that have analyzed the question on motions to dismiss have repeatedly rejected similar arguments. *See, e.g., Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading.); *Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion.")

New TSI Holding's argument should be rejected here as well.

### D.     New TSI Holdings's Assertion that the Plaintiff Fails to Allege Willful or Knowing Violations Ignores the Plaintiff's Allegations.

Under 47 U.S.C. § 227(c)(5) or 47 U.S.C. § 227(b)(3), the Court may award treble damages "[i]f the court finds that the defendant willingly or knowingly violated" the TCPA. Violations are willful or knowing if defendant "knew or should have known" its conduct violated the TCPA. *Echevvaria v. Diversified Consultants, Inc.*, No. 13 Civ. 4980 (LAK) (AJP), 2014 WL 929275, at *11 (S.D.N.Y. Feb. 28, 2014). Bad faith is not required. *Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), 2017 U.S. Dist. LEXIS 101640, 2017 WL 2838075, at *7 (D. Conn. June 30, 2017) (dismissal of treble damages claim unwarranted where defendant

knew calls violated TCPA).

Allegations support a willful or knowing violation of the TCPA when there is "evidence that a defendant was aware or should have been aware that it called an individual after he or she asked that the calls stop or that the defendant knew it was violating the TCPA but kept calling anyway." *Warman v. Law Office of Daniel M. Slane*, No. 14-cv-700 (LJV), 2017 U.S. Dist. LEXIS 36053, 2017 WL 971196, at *6 (W.D.N.Y. Mar. 13, 2017). Mr. Rose's allegations provide substantial evidence that Defendant knew, or should have known, that the calls it made to Mr. Rose were illegal because he repeatedly asked for the calls to stop:

- Despite unequivocally communicating that he did not wish to purchase a membership, shortly after his one-day free trial, Mr. Rose began receiving telephone solicitation calls from Boston Sports Club.
- On at least five occasions, Mr. Rose asked Defendant to please stop contacting him.
- Additionally, in approximately March 2021, Mr. Rose directly emailed Defendant identifying his telephone number, stating that he did not consent to receive text messages from them, and stating in the comments, "STOP CALLING AND TEXTING ME. I have contacted the branch and they have changed my information, but you keep calling from a blocked number. Take me off every list you have. Otherwise I will need to escalate to the FTC or my congressman."
- An individual that participated in a trial membership at a Boston Sports Club location reported in February 2021 that after his trial, he chose not to purchase a membership. He then began to receive telephone solicitations despite repeated "attempts via phone, email, texts (and assurances that I'd be removed)," yet continued to receive calls. *See* https://goo.gl/maps/KdSmr7WfoGQpr3kp7 (last visited June 21, 2021).
- Another individual reported, "have asked multiple times to be taken off call list. Still being called." *See* https://goo.gl/maps/AR6dr2eiaPL8XNVU7 (last visited June 21, 2021).

*See* ECF No. 1 at ¶¶ 36-39, 51-52.

The authority cited by New TSI Holdings does not support its argument. In *Rcare v. Adelphia Supply USA, Inc.*, No. 16-CV-1786 (ERK) (JO), 2017 U.S. Dist. LEXIS 24985, at *4-5 (E.D.N.Y. Feb. 21, 2017), the court granted the defendant's motion to dismiss in a fax case because the plaintiff failed to allege "any evidence that ARcare asked Adelphia to stop sending

the faxes…". Here, Plaintiff demanded that Defendant stop calling him no less than 5 times, including one written request. Regardless, Defendant continued to call him.

In *Santiago v. Merriman River Assocs., LLC,* No. 3:17-cv-2054-VAB, 2018 U.S. Dist. LEXIS 91781, at *15 (D. Conn. June 1, 2018), the only other case Defendant relies on, the court denied a motion to dismiss because the allegations suggested that the defendant knew the calls to plaintiff would violate the TCPA (citing *Owens*, 2017 U.S. Dist. LEXIS 101640, 2017 WL 2838075, at *7), and "the allegation that [Santiago's] number was on the Do Not Call List [] raise[d] an inference that MRA knew or should have known she would not have consented to this type of phone call." *Santiago,* 2018 U.S. Dist. LEXIS 91781, at *15. Here, Mr. Rose has clearly alleged that he was on the Do Not Call Registry for more than five years before Defendant called him.

Finally, two years ago, Judge Carter considered and denied the same argument when brought by TSI Holdings' predecessor. *See Metten*, 2019 U.S. Dist. LEXIS 47138, at *9 ("it is also plausible that this marketing campaign featuring mass text messages was a knowing and willful violation of the TCPA"). As a result—and accepting all facts in the complaint as true and drawing all inferences in his favor—Mr. Rose has properly alleged a knowing and willful violation of the TCPA.

## V.  CONCLUSION

Based on the foregoing, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 1st day of September, 2021.

PARONICH LAW P.C.

By:  /s/ Anthony I. Paronich, *Admitted Pro Hac Vice*
     Anthony I. Paronich
     Email: anthony@paronichlaw.com
     350 Lincoln Street, Suite 2400
     Hingham, Massachusetts 02043
     Telephone: (617) 485-0018
     Facsimile: (508) 318-8100

     Jennifer Rust Murray, *Admitted Pro Hac Vice*
     Email: jmurray@terrellmarshall.com
     Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Email: amcentee@terrellmarshall.com
     TERRELL MARSHALL LAW GROUP PLLC
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

     Samuel J. Strauss, *Admitted Pro Hac Vice*
     Email: sam@turkestrauss.com
     TURKE & STRAUSS LLP
     613 Williamson Street, Suite 201
     Madison, Wisconsin 53703
     Telephone: (608) 237-1775
     Facsimile: (608) 509-4423

     *Attorneys for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification to all attorneys of record.

 /s/ Anthony I. Paronich, *Admitted Pro Hac Vice*
Anthony I. Paronich